**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

Debtor 1     Theresa A. Miller

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Middle District of Pennsylvania

Case number   16-02711-RNO

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | PNC Bank, National Association <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. | **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? _____ |

| | | | |
|---|---|---|---|
| 3. | **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> PNC Bank, N.A. <br> Name <br> 3232 Newmark Drive <br> Number    Street <br> Miamisburg    OH    45342 <br> City    State    ZIP Code <br><br> Contact phone 866-754-0659 <br><br> Contact email _____ | **Where should payments to the creditor be sent?** (if different) <br><br> PNC Bank, N.A. <br> Name <br> 3232 Newmark Drive <br> Number    Street <br> Miamisburg    OH    45342 <br> City    State    ZIP Code <br><br> Contact phone 866-754-0659 <br><br> Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known) 4-1     Filed on 10/21/2016 <br>                                                               MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

6. **Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _7_ _7_ _2_ _3_

7. **How much is the claim?**   $_____60,314.19_. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Mortgage and Note

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:**   Recorded Mortgage
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____
**Amount of the claim that is secured:**   $_____60,314.19
**Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____17,442.34

**Proof of Claim amended to include Post-Petition Delinquency iao $2,649.40 per Court approved Stipulation**

**Annual Interest Rate** (when case was filed) _6.50_ %
☑ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| --- | --- | --- |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

| **Part 3:** | **Sign Below** |
| --- | --- |

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date  ___04/26/2017___
              MM / DD / YYYY

/s/ Nicole LaBletta
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Nicole LaBletta | | |
| --- | --- | --- | --- |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Udren Law Offices, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 111 Woodcrest Road, Suite 200 | | |
| | Number     Street | | |
| | Cherry Hill | NJ | 08003 |
| | City | State | ZIP Code |
| Contact phone | 856-669-5400 | Email | nlabletta@udren.com |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: Theresa A. Miller

            CHAPTER 13

            CASE NO. 1:16-bk-02711-RNO

PNC Bank, National Association,
            Movant

vs.

Theresa A. Miller,
            Debtor/Respondent(s),

James E. Miller, Jr.
            Co-Debtor

    and

Charles J. DeHart, III, Esquire,
            Trustee/Respondent.

### STIPULATION IN SETTLEMENT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY

PNC Bank, National Association ("Mortgagee") and Theresa A. Miller ("Debtor"), through their respective counsel, hereby stipulate as follows (as used herein the singular shall include the plural and the masculine shall include the feminine):

1.     The automatic stay as provided by 11 U.S.C. §362 shall remain in full force and effect conditioned upon the terms and conditions set forth herein.

2.     Mortgagee is the holder of a mortgage which is a lien on Debtor's real property known as and located at 24 E. 2nd St., Hummelstown, PA 17036.

3.     The parties certify that the total post-petition delinquency as of February 20, 2016 is $2,649.40, consisting of post-petition payments from 11/1/16 through 2/1/17 at $604.84 per month, attorney fees in the amount of $650.00, filing fees in the amount of $181.00, less a suspense balance of $600.96.

4.     Within thirty (30) days of the date this Stipulation is approved by the court, Debtor shall file an Amended Chapter 13 Plan which includes the post-petition delinquency in the amount of $2,649.40 as set forth above.

5.     Within thirty (30) days of the date the aforementioned Amended Chapter 13 Plan is filed with the Court, Mortgagee shall file an Amended Proof of Claim which provides for the post-petition delinquency in the amount of $2,649.40 as set forth above. The pre-petition arrears as originally stated in Mortgagee's Proof of Claim, filed on October 21, 2016, shall in no way be affected by the terms of the instant Stipulation except as specifically set forth herein.

6. Beginning with the payment due 03/01/2017, Debtor shall pay the regular monthly mortgage payment, currently in the amount of $604.84, payable on the first of each month. All payments are to be made by **certified check, Trustee funds or electronic payment** and be made payable to PNC Bank, National Association. The address to which payments should be sent is 3232 Newmark Drive, Miamisburg, OH 45342. Debtor shall reference their loan number on any and all payments submitted pursuant hereto.

7. Should Debtor's regular monthly payment amount change, Debtor shall be notified of such change by the mortgagee, and the monthly payment amount due under the terms of this stipulation shall change accordingly.

8. Should Debtor fail to timely amend her plan, or if any regular monthly mortgage payment commencing after the cure of the post-petition delinquency is more than fifteen (15) days late, Mortgagee may send Debtor and counsel a written notice of default of this Stipulation. If the default is not cured within ten (10) days of the date of the notice, counsel for Mortgagee may file a Certification of Default with the Court and the Court shall enter an Order granting relief from the automatic stay as to the mortgaged property.

9. In addition, it is further agreed by Debtor that it shall constitute an additional default under this stipulation should Debtor fail to comply with all covenants set forth in the Note and Mortgage Agreements, including but not limited to payment of all non-escrowed real estate taxes when they become due and maintenance of homeowner's insurance on the property. Should Movant advance any amounts on Debtors' behalf for delinquent real estate taxes and/or homeowner's insurance, Movant shall send Debtor and Debtor's counsel a written notice of default of this Stipulation as set forth in paragraph 8 herein.

10. In the event the instant bankruptcy case is converted to a case under Chapter 7, the Debtor shall cure the pre-petition and post-petition mortgage arrears within ten (10) days from the date of such conversion. Should the Debtor fail to cure said arrears within the ten day period, such failure shall be deemed a default under the terms of this Stipulation and Movant may send Debtor and counsel a written notice of default. If the default is not cured within ten (10) days from the date of the notice, counsel for Mortgagee may file a Certification of Default with the Court and the Court shall enter an Order granting relief from the automatic stay as to the mortgaged property.

11. The parties agree that a facsimile signature shall have the same force and effect as an original signature.

Nicole LaBletta, Esquire
UDREN LAW OFFICES, P.C.
Attorneys for Mortgagee

John Matthew Hyams, Esquire
Attorney for Debtor

for Charles J. DeHart, III, Esquire
Chapter 13 Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: Theresa A. Miller

CHAPTER 13

CASE NO. 1:16-bk-02711-RNO

PNC Bank, National Association,
              Movant

  vs.

Theresa A. Miller,
              Debtor(s)/Respondent(s),

James E. Miller, Jr.
              Co-Debtor

   and

Charles J. DeHart, III, Esquire,
              Trustee/Respondent.

Nature of Proceeding:  **Stipulation
Regarding Automatic Stay**

**ORDER**

IT IS HEREBY ORDERED that the Stipulation filed on _____,
regarding the above-referenced matter is APPROVED.

_____
United States Bankruptcy Judge

THERESA A MILLER
JAMES E MILLER JR
97 GOEHMAN AVE
HUMMELSTOWN          PA 17036

ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

ACCOUNT HISTORY

THIS IS A STATEMENT OF ACTUAL ACTIVITY IN YOUR ESCROW ACCOUNT FROM
01/01/15 THROUGH 05/31/16.
     YOUR   MONTHLY   MORTGAGE PAYMENT FOR THE PAST YEAR WAS
          543.32 OF WHICH      404.53 WAS FOR PRINCIPAL AND INTEREST
     AND      138.79 WENT INTO YOUR ESCROW ACCOUNT.

| MO | PROJ ESCROW DEPOSIT | ACTUAL ESCROW DEPOSIT | PROJ ESCROW PAYMENTS | DESCRIPTION | ACTUAL ESCROW PAYMENTS | PROJ ESCROW BALANCE | ACTUAL ESCROW BALANCE |
|----|------|------|------|------|------|------|------|
| STARTING BALANCE | | | | | | 1193.44 | 4070.80- |
| JAN | 198.91 | * | | | | 1392.35 | 4070.80- |
| FEB | 198.91 | * | | CITY TAX | 569.64* | 1591.26 | 4640.44- |
| MAR | 198.91 | 2252.70 * | 569.64 | CITY TAX | * | 1220.53 | 2387.74- |
| APR | 198.91 | 6898.14-* | | | | 1419.44 | 9285.88- |
| MAY | 198.91 | 5406.48 * | | | | 1618.35 | 3879.40- |
| JUN | 198.91 | 901.08 * | | | | 1817.26 | 2978.32- |
| JUL | 198.91 | 277.58 * | 721.53 | HAZARD INS | 734.54* | 1294.64 | 3435.28- |
| AUG | 198.91 | 138.79 * | 1095.73 | SCHOOL TAX | 1095.73 | 4392.22- | 4392.22- |
| SEP | 198.91 | * | | | | 596.73 | 4392.22- |
| OCT | 198.91 | * | | | | 795.64 | 4392.22- |
| NOV | 198.91 | * | | | | 994.55 | 4392.22- |
| DEC | 198.91 | * | | | | 1193.46 | 4392.22- |
| MAR | | | | CITY TAX | 569.64* | 1193.46 | 4961.86- |
| SEP | | 3936.63 *Y | | | Y | 1193.46 | 1025.23- |

LAST YEAR, WE ANTICIPATED THAT PAYMENTS FROM YOUR ACCOUNT WOULD BE
MADE DURING THIS PERIOD EQUALING     2,386.90. UNDER FEDERAL LAW,
YOUR LOWEST MONTHLY BALANCE SHOULD NOT HAVE EXCEEDED      397.82
(NO MORE THAN TWICE LAST YEARS PROJECTED MONTHLY ESCROW PAYMENT),
UNLESS YOUR MORTGAGE CONTRACT OR STATE LAW SPECIFIES A LOWER AMOUNT.
UNDER YOUR MORTGAGE CONTRACT AND STATE LAW, YOUR LOWEST MONTHLY
BALANCE SHOULD NOT HAVE EXCEEDED      397.82.

AN ASTERISK (*) INDICATES A DIFFERENCE FROM A PREVIOUS ESTIMATE
EITHER IN THE DATE OR THE AMOUNT. IF YOU WANT A FURTHER EXPLANATION,
PLEASE CALL OUR TOLL-FREE NUMBER.

### ACCOUNT PROJECTION

CITY TAX            :       569.64
--------------------------------------
ANNUAL DISBURSEMENTS :       569.64
DISBURSEMENTS OUTSIDE
  PROJECTION YEAR   :     1,834.04
--------------------------------------
TOTAL DISBURSEMENTS :     2,403.68
        2,403.68 / 12 =     200.31 ESCROW PAYMENT

| MO | PAYMENTS TO | PAYMENTS FROM | DESCRIPTION | CURRENT BAL PROJECTION | REQUIRED BAL PROJECTION |
|---|---|---|---|---|---|
| BALANCE AS OF 05/31/16........................ | | | | 2,859.27- | 200.31 |
| JUN | 200.31 | | | 2,658.96- | 400.62 |
| JUL | 200.31 | | | 2,458.65- | 600.93 |
| AUG | 200.31 | | | 2,258.34- | 801.24 |
| SEP | 200.31 | | | 2,058.03- | 1,001.55 |
| OCT | 200.31 | | | 1,857.72- | 1,201.86 |
| NOV | 200.31 | | | 1,657.41- | 1,402.17 |
| DEC | 200.31 | | | 1,457.10- | 1,602.48 |
| JAN | 200.31 | | | 1,256.79- | 1,802.79 |
| FEB | 200.31 | | | 1,056.48- | 2,003.10 |
| MAR | 200.31 | 569.64 | CITY TAX | 1,425.81- | 1,633.77 |
| APR | 200.31 | | | 1,225.50- | 1,834.08 |
| MAY | 200.31 | | | 1,025.19- | 2,034.39 |

THE EXPECTED AMOUNT IN YOUR ESCROW ACCOUNT IS      2,859.27-. YOUR
STARTING BALANCE ACCORDING TO THIS ANALYSIS SHOULD BE      200.31 .

THIS MEANS YOU HAVE A SHORTAGE OF     3,059.58.   THIS SHORTAGE MAY
BE COLLECTED FROM YOU OVER A PERIOD OF 12 MONTHS OR MORE UNLESS THE
SHORTAGE IS LESS THAN 1 MONTHS DEPOSIT, IN WHICH CASE WE HAVE THE
OPTION OF REQUESTING PAYMENT WITHIN 30 DAYS. WE HAVE DECIDED TO DO
NOTHING.

YOUR   MONTHLY    MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE
       604.84 OF WHICH       404.53 WILL BE FOR PRINCIPAL AND
INTEREST AND      200.31 WILL GO INTO YOUR ESCROW ACCOUNT.

NEW PAYMENT INFORMATION
    PRINCIPAL AND INTEREST            404.53
    ESCROW PAYMENT                    200.31
                                ---------------
NEW PAYMENT EFFECTIVE 06/01/16         604.84

KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR
ACCOUNT AT THE END OF THE NEXT ESCROW ACCOUNTING COMPUTATION YEAR.

I hereby CERTIFY that this document is recorded in the Recorder's Office of Dauphin County, Pennsylvania.



*Philip Spaseff*

Parcel Number:

Philip Spaseff
Recorder of Deeds
[Space Above This Line For Recording Data]

RETURN TO:
COMMONWEALTH UNITED MORTGAGE COMPANY
P.O. BOX 4769
HOUSTON, TEXAS 77210-9481

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **June 14, 1999**. The mortgagor is
JAMES E MILLER JR and THERESA A MILLER , Husband and Wife,

("Borrower"). This Security Instrument is given to

National City Mortgage Co dba
Eastern Mortgage Services

which is organized and existing under the laws of **The State of Ohio**, and whose
address is **3232 Newmark Drive, Miamisburg, OH   45342**

("Lender"). Borrower owes Lender the principal sum of

SIXTY FOUR THOUSAND & 00/100

Dollars (U.S. $   **64,000.00**  ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   **July 1, 2029**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
**Dauphin** County, Pennsylvania:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of    **24 E 2ND ST, HUMMELSTOWN**                                        [Street, City],
Pennsylvania            **17036**            [Zip Code] ("Property Address");
PENNSYLVANIA - Single Family - FNMA/FHLMC
    UNIFORM INSTRUMENT   Form 3039 9/90
-6R(PA) (9410)                        Amended 5/91
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6                        Initials:

Case 1:19-bk-02711-HWV Doc 42 Filed 05/29/19 Entered 05/29/19 12:00:51 Desc
Main Document    Page 11 of 31

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3039 9/90

Case 1:16-bk-02711-RWQN Doc 08-2 Filed 05/20/19 Entered 05/20/19 12:00:18 Desc
Main Document Page 12 of 31

**ALL THAT CERTAIN** tract or parcel of land situate in the Borough of Hummelstown, County of Dauphin and Commonwealth of Pennsylvania, according to a survey of Terrence D. Shope, Registered Surveyor, dated April 9, 1979, Drawing Number 18-44, bounded and described as follows, to wit:

**BEGINNING** at a point on the northern side of East Second Street, which point is located two hundred seventy-eight and seventy-five one-hundredths (278.75) feet west of the center line of North Water Street; thence along the northern line of East Second Street, south eighty-four (84) degrees west, fifty-four and twenty-five one-hundredths (54.25) feet to property now or late of the Reading Railroad, now or late of R. Lee Engle, *et ux.*; thence along said property, north six (06) degrees west, eighty-seven (87) feet to a point; thence along the southern right-of-way line now or late of the Penn Central Railroad, north eighty-four (84) degrees east, fifty-four and twenty-five one-hundredths (54.25) feet to a point; thence south six (06) degrees east, eighty-seven (87) feet to the northern side of East Second Street, the point and place of BEGINNING.

**AND** the eastern eight and twenty-five one-hundredths (8.25) feet of said premises being the western one-half (1/2) of Mulberry Alley, variously known also as Mulberry Street or Walnut Alley, located north of the northern line of East Second Street in the Borough of Hummelstown, sixteen and one-half (16 1/2) feet wide, extending north from the northern line of East Second Street to the right-of-way now or late of the Reading Railroad one hundred four (104) feet, more or less. Pursuant to Act of Assembly of February 1, 1966, more commonly known as "The Borough Code" (1965 P. L. 1656 No. 581) Section 1724, as amended April 28, 1978, the owners of more than ten (10%) percent of the front feet of land over which such portion of said alley was laid out on May 15, 1979, at 7:15 P. M., in the Office of the Council of the Borough of Hummelstown, located at 136 South Hanover Street, Hummelstown, Pennsylvania, after fifteen (15) days' notice duly published and sent to all owners of real estate abutting said unopened portion of said alley, petitioned the Borough council to remove said portion of said alley from the Plan of Streets of Hummelstown and cancel the laying out thereof, said portion of said alley not having been opened for a period of ten (10) years or longer. At its regularly scheduled meeting held at 7:30 P. M., on the date and at the location above set forth, the Council of the Borough of Hummelstown, after hearing said Petition, enacted an Ordinance removing said unopened portion of said alley from the Plan of Streets for Hummelstown and cancelling the laying out thereof. No objections or exceptions having been heard, filed or taken at or before said hearing and no appeals having been filed within thirty (30) days after enactment of said Ordinance, title to the western one-half (1/2) of said unopened portion of said alley, also being the easternmost eight and twenty-five one-hundredths (8.25) feet to the premises herein conveyed, vested by operation of law in Stephen M. Comarnitsky, *et ux.*, absolutely.

**HAVING THEREON ERECTED** a dwelling house known as and which has the address of 24 East Second Street, Hummelstown, Pennsylvania 17036.

**BEING THE SAME PREMISES** which James E. Miller and Beverly J. Miller, his wife by their deed dated July 29, 1988, and recorded on August 1, 1988, in the Office of the Recorder of Deeds in and for Dauphin County, Pennsylvania, in Record Book 1153, Page 391, granted and conveyed unto James E. Miller, Jr., and Theresa A. Miller, his wife.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Case 1:16-bk-02711-RWN Doc 38-2 Filed 05/29/19 Entered 05/29/19 12:30:32 Desc
Main Document Page 14 of 31

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

Case 4:10-bk-02711-TWQ  Doc 94  Filed 05/29/18  Entered 05/29/18 12:50:33  Desc
Main Document  Page 15 of 31

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Case 1:16-bk-02711-RWO Doc 2 Filed 05/29/19 Entered 05/29/19 12:00 Desc
Main Document Page 16 of 31

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
     JAMES E MILLER JR      -Borrower

_____    _____ (Seal)
     THERESA A MILLER      -Borrower

_____ (Seal)    _____ (Seal)
     -Borrower      -Borrower

**Certificate of Residence**

I, Beth Nagy , do hereby certify that the correct address of the within-named Mortgagee is 3232 Newmark DR Miamisburg OH 45342

Witness my hand this 14th day of June , 1999 .

_____
     Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,** DAUPHIN **County ss:**

On this, the 14th day of June , 1999 , before me, the undersigned officer, personally appeared James E. Miller, Jr., and Theresa A. Miller

known to me (or satisfactorily proven) to be the person s whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

_____

NOTARY PUBLIC
Title of Officer

Notarial Seal
Gwen B. Adams, Notary Public
Hummelstown Boro, Dauphin County
My Commission Expires Sept. 10, 2001
Member, Pennsylvania Association of Notaries

Notarial Seal
Gwen B. Adams, Notary Public
Hummelstown Boro, Dauphin County
My Commission Expires Sept. 10, 2001
Member, Pennsylvania Association of Notaries

-6R(PA)(9410)      Page 6 of 6      Form 3039 9/90

# NOTE



June 14, 1999                    CAMP HILL        ,    PENNSYLVANIA
[Date]                            {City}              [State]

24 E 2ND ST, HUMMELSTOWN, Pennsylvania 17036

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 64,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

**National City Mortgage Co dba Eastern Mortgage Services**

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on August 1st , 1999 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on July 1, 2029 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at National City Mortgage Co.
P.O. Box 85020, Louisville, KY 40285-5020
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 404.53 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

ORIGINAL

Case 1:10-bk-02711-RNO Document 2 Filed 05/29/10 Entered 05/29/10 12:00 Documents
Main Document Page 18 of 31

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAMES S MILLER JR              -Borrower

SSN:

_____ (Seal)
THERESA A MILLER              -Borrower

JUN 29 1999

PAY TO THE ORDER OF        SSN:

_____ (Seal)
                              -Borrower

WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO.    SSN:

JOSHUA LEDFORD        _____ (Seal)
Assignment Specialist                      -Borrower

                              SSN:

                              *(Sign Original Only)*

Case 1:10-bk-02711-RNO Doc 2 Filed 07/29/15 Entered 04/26/17 10:20:12 Desc
Main Document Page 19 of 31



## CERTIFICATE

The undersigned, Laura L. Long, Assistant Secretary of PNC Bank, National Association, does hereby certify as follows:

1. On January 1, 2005, National City Mortgage Co. ("Old NCMC") was an Ohio corporation and wholly owned subsidiary of National City Bank of Indiana ("NCBIN").

2. Effective January 1, 2005, Old NCMC first contributed the servicing business to NCMC NewCo, Inc., a newly created entity ("New NCMC"), which was a wholly owned subsidiary of Old NCMC.

3. Effective January 1, 2005, Old NCMC made a dividend of the origination business to NCBIN. After the contribution and dividend, Old NCMC held cash and the ADA interests.

4. Effective January 4, 2005, New NCMC changed its name from "NCMC NewCo, Inc." to "National City Mortgage Co."

5. Effective January 4, 2005, Old NCMC changed its name from "National City Mortgage Co." to "National City Mortgage, Inc."

6. Effective July 22, 2006, National City Bank of Indiana merged with and into National City Bank.

7. Effective July 22, 2006, National City Mortgage Co. became a wholly owned subsidiary of National City Bank.

8. Effective January 1, 2007, National City Mortgage, Inc. merged into National City Real Estate Services LLC, a company formed on December 4, 2006.

9. Effective October 1, 2008, National City Mortgage Co. merged into National City Bank and became a division of National City Bank.

10. National City Bank was a wholly owned subsidiary of National City Corporation.

11. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

12. Effective as of November 6, 2009, National City Real Estate Services LLC became a whollyowned subsidiary of PNC Bank, National Association. Prior to this merger, National City Real Estate Services LLC was a wholly owned subsidiary of National City Bank.

Member of The PNC Financial Services Group

National City Real Estate Services LLC dissolved effective November 7, 2009 and all of its assets and liabilities were distributed in connection with the dissolution to PNC Bank, National Association, it's sole member.

13. Effective as of November 6, 2009, National City Bank was merged with and into PNC Bank, National Association. This merger was approved by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A").

14. PNC Bank, National Association is a wholly owned subsidiary of PNC Bancorp, Inc. PNC Bancorp, Inc. is a wholly owned subsidiary of The PNC Financial Services Group, Inc.

15. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Bank this 20th day of December, 2010.

_____
Laura L. Long



Case 1:16-bk-02711-RNO Doc 2 Filed 05/29/12 Entered 05/29/12 13:05 Document Main Document Page 21 of 31

████████████

**Receipt**
This is not a bill. Please do not remit payment.

CORPORATION SERVICE COMPANY
ATTN: LISA VAIDO
887 SOUTH HIGH STREET
COLUMBUS, OH 43206

---

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jennifer Brunner

████████████

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**NATIONAL CITY MORTGAGE CO.**

and, that said business records show the filing and recording of:

Document(s)                                      Document No(s):

**MERGED OUT OF EXISTENCE**                      ████████████



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 1st day of October, A.D.
2008.

*Jennifer Brunner*

Ohio Secretary of State

---



Prescribed by:

The Ohio Secretary of State
Central Ohio: (614) 466-3910
Toll Free: 1-877-SOS-FILE (1-877-767-3453)

www.sos.state.oh.us
e-mail: busserv@sos.state.oh.us

**Expedite this Form:** (Select One)

| Mail Form to one of the Following: | |
|---|---|
| ● Expedite | P.O. Box 1390 |
| | Columbus OH 43216 |
| *** Requires an additional fee of $100 *** | |
| ○ Non Expedite | P.O. Box 1329 |
| | Columbus OH 43216 |

# CERTIFICATE OF MERGER
### Filing Fee $125.00
(154-MER)

In accordance with the requirements of Ohio law, the undersigned corporations, banks, savings banks, savings and loan, limited liability companies, limited partnerships and/or partnerships with limited liability, desiring to effect a merger, set forth the following facts.

**I. SURVIVING ENTITY**

    A. The name of the entity surviving the merger is.    National City Bank

    B. Name Change: As a result of this merger, the name of the surviving entity has been changed to the following.

    _____

    (Complete only if name of surviving entity is changing through the merger)

    C. The surviving entity is a.   **(Please check the appropriate box and fill in the appropriate blanks)**

    ☐ Domestic (Ohio) For-Profit Corporation. charter number _____

    ☐ Domestic (Ohio) Nonprofit Corporation. charter number _____

    ☐ Foreign (Non-Ohio) For-Profit Corporation incorporated under the laws of the state/country of _____
        and licensed to transact business in the state of Ohio under license number

    ☒ Foreign (Non-Ohio) For-Profit Corporation incorporated under the laws of the state/country of   United States
        and **NOT** licensed to transact business in the state of Ohio.

    ☐ Foreign (Non-Ohio) Nonprofit Corporation under the laws of the state/country of _____
        and licensed to transact business in the state of Ohio under license number

    ☐ Foreign (Non-Ohio) Nonprofit Corporation under the laws of the state/country of _____
        and **NOT** licensed to transact business in the state of Ohio

    ☐ Domestic (Ohio) For-Profit Limited Liability Company, with registration number _____

    ☐ Domestic (Ohio) Nonprofit Limited Liability Company, with registration number _____

    ☐ Foreign (Non-Ohio) For-Profit Limited Liability Company organized under the laws of the state/country of _____
        and registered to do business in the state of Ohio under registration number

    ☐ Foreign (Non-Ohio) For-Profit Limited Liability Company organized under the laws of the state/country of _____
        and **NOT** registered to do business in the state of Ohio

    ☐ Foreign (Non-Ohio) Nonprofit Limited Liability Company organized under the laws of the state/country of _____
        and registered to do business in the state of Ohio under registration number

    ☐ Foreign (Non-Ohio) Nonprofit Limited Liability Company organized under the laws of the
        state/country of _____ and **NOT** registered to do business in the State of Ohio

    ☐ Domestic (Ohio) Limited Partnership, with registration number _____

2008 OCT -1 PM 3: 28 RECEIVED

- [ ] Foreign (Non-Ohio) Limited Partnership organized under the laws of the state/country of _____ and registered to do business in the state of Ohio under registration number _____
- [ ] Foreign (Non-Ohio) Limited Partnership organized under the laws of the state/country of _____ and NOT registered to do business in the state of Ohio
- [ ] Domestic (Ohio) Partnership Having Limited Liability, with the registration number _____
- [ ] Foreign (Non-Ohio) Partnership Having Limited Liability organized under the laws of the state/country of _____ and registered to do business in the state of Ohio under registration number _____
- [ ] Foreign (Non-Ohio) Partnership Having Limited Liability organized under the laws of the state/country of _____ and NOT registered to do business in the state of Ohio
- [ ] General Partnership NOT registered with the state of Ohio

## II. MERGING ENTITY

The name, charter/license/registration number, type of entity, state or country of incorporation or organization, respectively, of which is the entities merging out of existence are as follows. (If this is insufficient space to reflect all merging entities, please attach a separate sheet listing the merging entities).

| Name/Charter, License or Registration Number | State/Country of Organization | Type of Entity |
|---|---|---|
| National City Mortgage Co. (1500343) | Ohio | Corporation |
|  |  |  |
|  |  |  |
|  |  |  |

## III. MERGER AGREEMENT ON FILE

The name and mailing address of the person or entity from whom/which eligible persons may obtain a copy of the agreement of merger upon written request:

| Catherine B. Wexler | 1900 East Ninth Street, Loc. 01-3174 |
|---|---|
| Name | Street Address / P.O. Box Address |
| Cleveland | OH | 44114 |
| City | State | Zip Code |

## IV. EFFECTIVE DATE OF MERGER

This merger is to be effective on __October 1, 2008__ (If a date is specified, the date must be a date on or after the date of filing; the effective date of the merger cannot be earlier than the date of filing. If no date is specified, the date of filing will be the effective date of the merger).

## V. MERGER AUTHORIZED

Each constituent entity has complied with all of the laws under which it exists and the laws permit the merger. The agreement of merger is authorized on behalf of each constituent entity and that each person who signed the certificate on behalf of each entity is authorized to do so.

**VI. STATUTORY AGENT**

If the surviving entity is a foreign entity **NOT** licensed to transact business in this state, the name and address of statutory agent upon whom any process, notice or demand may be served is

CSC-Lawyers Incorporating Service

( Corporation Service Company )

_____
Name

50 West Broad Street, Suite 1800
_____
Mailing Address

Columbus
_____
City

Ohio    43213
_____  _____
        Zip Code

☐ If the agent is an individual and using a P.O. Box, check this box to certify the agent is a resident of the state of Ohio.

**VII. STATEMENT OF MERGER**

Upon filing, or upon such later date as specified herein, the merging entity/entities listed herein shall merge into the listed surviving entity.

**VIII. AMENDMENTS**

In the case of a merger into a domestic corporation, limited liability company, or limited partnership, any amendments to the articles of incorporation, articles of organization, or certificate of limited partnership of the surviving domestic entity shall be filed with the certificate of merger.

☐ Amendments are attached          ☐ No Amendments

**IX. REQUIREMENTS OF CORPORATIONS MERGING OUT OF EXISTENCE**

If a domestic or foreign corporation licensed to transact business in this state is a constituent entity and the surviving or new entity resulting from the merger is not a domestic or foreign corporation that is to be licensed to transact business in this state, the certificate of merger or consolidation shall be accompanied by the affidavits, receipts, certificates, or other evidence required by division (C) of section 1702.47 of the Revised Code, with respect to each domestic corporation, and by the affidavits, receipts, certificates, or other evidence required by division (C) or (D) of section 1703.17 of the Revised Code, with respect to each foreign constituent corporation licensed to transact business in this state.

**X. QUALIFICATION OR LICENSURE OF FOREIGN SURVIVING ENTITY**

A   The listed surviving foreign entity desires to transact business in Ohio as a foreign corporation bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability, and hereby appoints the following as its statutory agent upon whom process, notice or demand against the entity may be served in the state of Ohio. The name and complete address of the statutory agent is:

_____
Name

_____
Mailing Address

_____
City

Ohio
_____
      Zip Code

☐ If the agent is an individual and using a P.O. Box, check this box to certify the agent is a resident of the state of Ohio.

The subject surviving foreign corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability irrevocably consents to service of process on the statutory agent listed above as long as the authority of the agent continues, and to service of process upon the Secretary of State of Ohio if the agent cannot be found, if the corporation, bank, savings bank, savings and loan, limited liability company, limited partnership, or partnership having limited liability fails to designate another agent when required to do so, or if the foreign corporation's, bank's, savings bank's savings and loan's, limited liability company's limited partnership's or partnership having limited liability's license or registration to do business in Ohio expires or is canceled.

Case 1:18-bk-02711-HWV Doc 2 Filed 05/29/19 Entered 05/29/19 12:05:45 Desc Main Document Page 25 of 31

B. The qualifying entity also states as follows. (Complete only if applicable)

1. **Foreign Notice Under Section 1703.031**
   (If the qualifying entity is a foreign bank, savings bank, or savings and loan, then the following information must be completed.)

   (a) The name of the Foreign Nationally/Federally chartered bank, savings bank, or savings and loan association is:

   _____

   (b) The name(s) of any Trade Name(s) under which the corporation will conduct business:

   _____
   _____
   _____

   (c) The location of the main office (non Ohio) shall be:

   _____
   Street Address / P. O. Box Address

   _____        _____    _____    _____
   City              County        State         Zip Code

   (d) The principal office location in the state of Ohio shall be:

   _____
   Street Address / P.O. Box Address

   _____        _____    **Ohio**      _____
   City              County        State         Zip Code

   **(If there will not be an office in the state of Ohio, please list none)**

   (e) The corporation will exercise the following purpose(s) in the state of Ohio:
   (Please provide a brief summary of the business to be conducted - a general clause is not sufficient.)

   _____
   _____
   _____

2. **Foreign Qualifying Limited Liability Company under section 1705.54**
   (If the qualifying entity is a foreign limited liability company, the following information must be completed.)

   (a) The name of the For-Profit or Nonprofit limited liability company in its state of organization/registration is:

   _____

   (b) The name under which the *limited liability company* desires to transact business in Ohio (if different from its home state name) is:

   _____
   _____

   (c) The limited liability company was organized or registered on _____ under the laws of the state/country of _____

   (d) The address to which interested persons may direct requests for copies of the articles of organization, operating agreement, bylaws, or other charter documents of the company is:

   _____
   Street Address/ P.O. Box Address

   _____                      _____    _____
   City                            State         Zip Code

Page 5

3. **Foreign Qualifying Limited Partnership under section 1782.45**
   (If the qualifying entity is a foreign limited partnership, the following information must be completed.)

   (a) The name of the limited partnership is:

   (b) The limited partnership was formed on: _____

   Under the laws of the state/country of: _____

   (c) The address of the office of the limited partnership in its state/country of organization is:

   _____
   Street Address / P.O. Box Address

   _____  _____  _____  _____
   City                County     State    Zip Code

   (c) The limited partnership's principal office address is:

   _____
   Street Address / P.O. Box Address

   _____  _____  _____  _____
   City                County     State    Zip Code

   (e) The names and business or residence addresses of the general partners of the partnership are as follows:

   Names                          Street Address / P.O. Box Address

   _____        _____
   _____        _____
   _____        _____
   _____        _____

(If insufficient space to cover this item, please attach a separate sheet listing the general partners and their respective addresses)

   (f) The address of the office where a list of the names and business or residence addresses of the limited partners and their respective capital contributions is to be maintained is:

   _____
   Street Address / P.O. Box Address

   _____  _____  _____  _____
   City                County     State    Zip Code

   The limited partnership hereby certifies that it shall maintain said records until the registration of the limited partnership in Ohio is canceled or withdrawn.

4 Foreign Qualifying Partnership Having Limited Liability Under Section 1775.64
(If the qualifying entity is a foreign partnership having limited liability, the following information must be completed.)

(a) The name of the partnership shall be:

_____

(b) The partnership was formed under the laws of the state/country of: _____

(c) Please complete the following appropriate section (either item c(1) or c(2) ):

(1.) The address of the partnership's principal office in Ohio is:

_____
Street Address / P. O. Box Address

_____ Ohio _____
City                                                              Zip Code

*(If the partnership does not have a principal office in Ohio, then item c(2) must be completed)*

(2.) The address of the partnership's principal office (Non-Ohio).

_____
Street Address / P. O. Box Address

_____ _____ _____
City                                   State                      Zip Code

(d) The business which the partnership engages in is:

_____
_____

**(Proceed to page 7 for signatures of authorized officers, partners and representatives.)**

Complete the information in this section if box (1), (2) or (3) is checked.

**AFFIDAVIT**

In lieu of dissolution releases from various governmental authorities (1701.86(H)(6) ORC)

National City Mortgage Co.
(Exact Name of Corporation)

The undersigned, being first duly sworn, declares that on the dates indicated below, each of the named state governmental agencies was advised IN WRITING of the scheduled date of filing of the Certificate of Dissolution and was advised IN WRITING of the acknowledgement by the corporation of the applicability of the provisions of Section 1701.95 of the ORC.

| AGENCY | DATE NOTIFIED |
|---|---|
| Ohio Department of Taxation<br>Dissolution Section<br>Box 182382<br>Columbus, Ohio 43218-2382 | 10/1/2008 |
| Ohio Job & Family Services<br>Status and Liability Section<br>Data Correspondence Control<br>Overnight: 4020 East 5th Avenue<br>　　　　Columbus, OH 43219-1811<br>Regular: P.O. Box 182413<br>　　　　Columbus, OH 43218-2413<br>Fax: 614-752-4811<br>Phone: 614-466-2319 | 10/1/2008 |

The treasurer of any County named below.

| NONE | N/A |
|---|---|
| | |
| | |

| Ohio Bureau of Workers' Compensation<br>30 W. Spring Street<br>Columbus, Ohio 43215 | 10/1/2008 |
|---|---|

( Note: This affidavit must be signed by one or more persons executing the certificate of dissolution or by an officer of the corporation )

By: _____   Title: President

Name: Joseph Cartellone

1900 East Ninth Street
(Street)                    NOTE- P.O. Box Addresses are NOT acceptable.

Cleveland                OH           44114
(City)                   (State)      (Zip Code)

Sworn before me and subscribed in my presence on   October 1, 2008
                                                    (Date)

_____          SUSAN J. CRAMER
                                   Notary Public, State of Ohio, Cuy. Cty
                                   My commission expires Jan. 31, 2010

                          Commission Expires   1/31/2010
(Notary Seal)                                  (Date)

691                        Page 4 of 5              Last Revised: June 2004

Complete the information in this section if box (1), (2) or (3) is checked.

STATE OF OHIO

County of __Cuyahoga__ :SS

__Joseph Cartellone__ , being first duly sworn, deposes and says that she/he is

__President__ of __National City Mortgage Co.__

(Title)

that this affidavit is made in compliance with section __1701.81__ of the ORC:

(Section #)

That said corporation has: (Check one of the following)

[XX] A. has no personal property in any county in the State of Ohio;

[ ] B. personal property only in the following county(ies)

and that the net assets of said corporation are sufficient to pay all personal property taxes accrued to date.

Signature: _____

Name: Joseph Cartellone

Sworn before me and subscribed in my presence on __October 1, 2008__

(Date)

_____
(Notary Public)

**SUSAN J. CRAMER**
Notary Public, State of Ohio, Cuy. Cty
My commission expires Jan. 31, 2010

(Notary Seal)                    Commission Expires __1/31/2010__

(Date)

561                          Page 5 of 5                    Last Revised: June 2004

Case 1:16-bk-02711-RNO Doc 66-2 Filed 05/29/19 Entered 05/29/19 12:50:19 Desc
Main Document Page 30 of 31

The undersigned constituent entities have caused this certificate of merger to be signed by its duly authorized officers, partners and representatives on the date(s) stated below

National City Bank
Exact name of entity

By: _____

Its: President

Date: 9/29/2008

National City Mortgage Co
Exact name of entity

By: _____

Its: President

Date: 9/29/2008

Exact name of entity

By: _____

Its: _____

Date: _____

Exact name of entity

By: _____

Its: _____

Date: _____

Exact name of entity

By: _____

Its: _____

Date: _____

Exact name of entity

By: _____

Its: _____

Date: _____

Exact Name of entity

By: _____

Its: _____

Date: _____

Exact Name of entity

By: _____

Its: _____

Date: _____

Exact name of entity

By: _____

Its: _____

Date: _____

Exact name of entity

By: _____

Its: _____

Date: _____

An authorized representative of each constituent corporation, partnership, or entity must sign the merger certificate ORC 1701.81(A), 1702.43 (A), 1705.38(A), 1775.47(A), 1782.433(A)